IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMILYNN WILLOUGHBY<br><br>    Plaintiff,<br><br>    vs.<br><br>ZUCKER, GOLDBERG & ACKERMAN, LLC; GMAC MORTGAGE CORPORATION a/k/a GMAC MORTGAGE LLC; DB50 2007-1; FRT 2011-1 TRUST; AMS SERVICING, LLC; WEALTHBRIDGE MORTGAGE CORP.;<br><br>    Defendants. | HON.<br><br>Civil Action No.:<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff, TamiLynn Willoughby hereby complains against Defendants as follows:

## JURISDICTION AND VENUE

1. The jurisdiction is appropriately laid in the United States District Courts, District of New Jersey pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

2. The venue is appropriately laid in the District Court of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omission giving rise to the claim occurred within the State of New Jersey.

## PARTIES

3. Plaintiff TamiLynn Willoughby has owned and resided at 710 Second Street in Union Beach, New Jersey since 2001.  TamiLynn Willoughby has been the victim of violations of state and federal law perpetrated by the several defendants herein.

4. Defendant Zucker, Goldberg & Ackerman, LLC is a law firm located at 200 Sheffield Street, Suite 101, Mountainside, New Jersey  07092.  Zucker, Goldberg & Ackerman, LLC sued

1

Plaintiff on behalf of GMAC Mortgage Corporation and FRT 2011-1 Trust in litigation within the state of New Jersey.  Defendant Zucker, Goldberg & Ackerman, LLC is a third party debt collector as that term is defined by the Fair Debt Collection Practices Act.

5.      Defendant GMAC Mortgage Corporation a.k.a. GMAC Mortgage, LLC, claims and/or claimed to be the owner of a note and mortgage associated with Plaintiff's property.  GMAC Mortgage regularly conducts business in New Jersey and maintains its principal place of business at 6716 Grade Lane, Building 9, Suite 910, Louisville, Kentucky, 40213.

6.      Defendant DB50 2007-1 Trust, claims and/or claimed to be the owner of the note and mortgage associated with Plaintiff's property.  DB50 2007-1 Trust regularly conducts business in New Jersey and maintains its principal place of business at 1100 North Market Street, Wilmington, Delaware, 19890.

7.      Defendant FRT 2011-1 Trust, claims to be the owner of the of the mortgage loan associated with Plaintiff's property.  FRT 2011-1 Trust regularly conducts business in New Jersey and maintains its principal place of business at 9062 Old Annapolis Road, Columbia, Maryland, 21045.

8.      Defendant AMS Servicing, LLC, is alleged to be the servicer of the mortgage loan associated with Plaintiff's loan. AMS Servicing, LLC conducts business in the state of New Jersey and maintains its principal place of business at 3374 Walden Avenue, Suite 120, Depew, New York, 14043.

9.      Defendant Wealthbridge Mortgage Corp. is alleged to have serviced the mortgage loan associated with Plaintiff's loan and the entity with which Plaintiff entered into a Forbearance Agreement.  Wealthbridge Mortgage Corp. regularly conducts business in New Jersey and maintains its offices at 15455 NW Greenbrier Pkwy, Suite 111 Beaverton, Oregon, 97006.

## ALLEGATIONS COMMON TO ALL COUNTS

10. Plaintiff TamiLynn Willoughby has owned and resided in her home located at 710 Second Street in Union Beach, New Jersey since 2001.

11. In 2006, Plaintiff refinanced her residential mortgage loan with Security Atlantic Mortgage Co. Inc. on February 10, 2006.

12. Plaintiff executed a promissory note in the amount of $183,000 payable to Security Atlantic Mortgage Co. Inc. This note was a subprime loan but plaintiff, on information and belief, was a prime credit borrower at the time of the closing of the loan.

13. A mortgage was executed in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Security Atlantic Mortgage Co. Inc.

14. On information and belief, Security Atlantic Mortgage Co., Inc. sold the Plaintiff's loan at or shortly after closing.

15. Plaintiff defaulted on her mortgage loan in 2006.

16. On October 23, 2006, Defendant GMAC Mortgage Corporation filed a foreclosure action under Docket F-19159-06.

17. Zucker, Goldberg and Ackerman, LLC represented GMAC Mortgage and all subsequent plaintiffs in the foreclosure action.

18. On or about July 2007 Plaintiff applied for an application for Final Judgment in the amount of $206,192.45.

19. The foreclosure action was forwarded to mediation.

20. During mediation on May 25, 2010, Defendant GMAC Mortgage through its counsel Eric Parker of Zucker, Goldberg and Ackerman, LLC and Plaintiff agreed to terms of a loan modification.

21. The modification agreement was written by Mr. Parker of Zucker Goldberg and Ackerman, LLC on behalf of its client and signed by Mr. Parker and Plaintiff and bound the defendants to a loan modification at the following terms:

    a. Plaintiff must make a down payment of $6,000 made payable to Wealthbridge Mortgage and delivered to Zucker Goldberg and Ackerman LLC.

    b. The loan will be amortized at 5% for 480 months.

    c. The monthly payment for principal interest and escrow was $1678.48 starting on July 1, 2010.

    d. The new unpaid principal balance of the loan was $215,365.30.

    e. The arrears of $71,736.30 were added as a non-interest bearing balloon payable upon maturity, refinance, or sale.

    f. If all trial payments are made, the lender agreed to make the modification permanent as per the terms above.

22. Plaintiff successfully made the initial $6,000 payment on June 7, 2010 and made all subsequent payments required by the modification agreement.

23. On July 25, 2010 Plaintiff executed a formal agreement provided by Wealthbridge Mortgage which mirrored the terms set forth in the mediation accord and again confirmed that full compliance by Plaintiff will result in a permanent loan modification at the terms above.

24. Plaintiff fully complied with all obligations in the agreement including making all eleven required payments in the amount of $1,678.48 under the forbearance.

25. During the forbearance period the loan servicer changed from Wealthbridge Mortgage to AMS Servicing, LLC.

26. By way of letter dated June 7, 2011 AMS Servicing LLC sent Plaintiff a permanent loan modification. The terms of the modification were materially different than the terms agreed to during the May 2010 mediation agreement: the new terms included a demand for a balloon payment of $114,362.41 which increased by $42,626.11 over the amount agreed to in the May 2010 modification agreement.

27. Plaintiff notified AMS Servicing LLC of the discrepancies, refused to sign the modification agreement in light of the fact that it was materially different from the May 2010 agreement and continued to make the necessary monthly payments required by the modification contract.

28. AMS Servicing, LLC accepted Plaintiff's payments and AMS Servicing, LLC acknowledged that the terms of the June 2011 modification did not match the 2010 Mediation Modification Agreement.

29. AMS Servicing, LLC issued Plaintiff Willoughby a revised modification agreement dated December 5, 2011. That agreement also contained additional material differences from the May 2010 agreement. The new agreement increased the interest rate to 5.5%, and demanded a balloon payment of $112,837.37 which was an increase of $41,101.07 over the amount agreed to in May 2010.

30. Plaintiff notified AMS Servicing LLC of the discrepancies with the December 2011 proposal and refused to sign the modification agreement in light of the fact that it was materially different from the May 2010 agreement and continued to make the required monthly payments of pursuant to the terms of the binding modification contract between the parties.

31. AMS Servicing, LLC accepted Plaintiff's payments.

32.     By way of letter dated May 23, 2012 AMS Servicing, LLC sent Plaintiff another updated modification contract that for a *third time* was materially different from the 2010 mediation modification agreement: the interest rate was again listed at 5.5%, and the balloon was again $112,837.37, which was an increase of $41,101.07 over that which was agreed to in May 2010.

33.     Plaintiff notified AMS Servicing LLC of the discrepancies with the May 2012 proposal and refused to sign the modification agreement in light of the fact that it was materially different from the May 2010 agreement but continued to make the monthly payments of $1,814.78 as referenced in the June 2011 Modification proposal.

34.     Between June 2010 and September 2012 Plaintiff made payments every month, and every month the payments were accepted.

35.     In total, Plaintiff paid *at least* $58,790.69 between June 2010 and December 2012.

36.     During this period of time, when the modification agreement was in place and Ms. Willoughby was paying for same, her home was severely damaged by Hurricane Sandy.

37.     Nevertheless, even during Hurricane Sandy and its aftermath, Ms. Willoughby continued to make the loan payments.  Ms. Willoughby also negotiated with her insurance company and with the State of New Jersey, Department of Community Affairs Homeowner Grant for Reconstruction, Rehabilitation, Elevation and Mitigation (RREM) Program for insurance and rebuilding monies.  Her insurance carrier issued payment in the amount of $132,682.66 against the repairs necessary for the property.  Defendants received all insurance funds.

38.     Ms. Willoughby used her own resources and made all the repairs to her property.  She requested reimbursement against the insurance payment but none was ever issued despite request for same.

39.   Ms. Willoughby also applied for special funds for rebuilding her property to be in compliance with new building codes and/or recommendations to prevent a storm from similarly damaging the property.  Those funds were granted and Ms. Willoughby was to receive $121,941.40 but for the defendants' false foreclosure action against Ms. Willoughby which resulted in the sale of her home.

40.   Ms. Willoughby, prior to sale, requested an accounting of the remaining amounts due on her mortgage so that Ms. Willoughby could attempt to pay off the entire remaining sum, but the lender and servicer, defendants GMAC Mortgage LLC and/or FRT 2011-1 Trust and AMS Servicing refused.  The final judgment in 2007 was for $205,915.30, and the lender had received at least $58,790.69 in monthly payments over the years during the modification and the $132,682.66 of insurance monies which belonged to Ms. Willoughby.

41.   Despite due request, and multiple motions to compel same, defendants GMAC Mortgage LLC and or FRT 2011-1 Trust successfully resisted the entry of an Order compelling an accounting of the remaining due on the loan prevented Ms. Willoughby from reinstating or repaying the debt.

42.   As a result, Ms. Willoughby's property was sold at sheriff sale for $100.00.

43.   The sale precluded Ms. Willoughby from receipt of the $121,941.40 earmarked for the improvement to her property pursuant to the State of New Jersey, Department of Community Affairs Homeowner Grant for Reconstruction, Rehabilitation, Elevation and Mitigation (RREM) Program for repairing and improving Sandy storm damaged property.

44.   New Jersey law provides for a 10-day Right of Redemption following sale and pursuant to that right, Ms. Willoughby demanded the accounting of the amounts necessary to redeem the property.  In response to that demand Defendants demanded repayment in full for the entire

amount of the Final Judgment entered in 2007, without any offsets against that amount by payment of the at least $58,790.69 from 2010 through 2012 or for receipt of the $132,682.66 insurance funds, nor for the improvements made to the property through Ms. Willoughby's own efforts and funds.  The total redemption amount required by plaintiff pursuant to formal notice was $292,691.92.

## CAUSES OF ACTION

## COUNT I

### Violation of the Fair Debt Collection Practices Act

(AMS Servicing, LLC; Wealthbridge Mortgage Corp.; Zucker Goldberg & Ackerman, LLC;)

45.     Plaintiff incorporates by reference all prior facts and allegations in this Complaint here as if set forth at length herein.

46.     Defendant AMS is a third party debt collector.  U.S.C. 1692a(4-6) because it is not the owner of the promissory note it seeks/sought to enforce and/or because Defendant's claim of ownership to the promissory note occurred after the loan was in default.

47.     Defendant Wealthbridge Mortgage Corp. is a third party debt collector.  U.S.C. 1692a(4-6) because it is not the owner of the promissory note it seeks/sought to enforce and/or because Defendant's claim of ownership to the promissory note occurred after the loan was in default.

48.     Defendant Zucker, Goldberg and Ackerman, LLC is a third party debt collector.  U.S.C. 1692a(4-6) because it is not the owner of the promissory note it seeks/sought to enforce and/or because Defendant's claim of ownership to the promissory note occurred after the loan was in default.

49.     Defendants have violated the Fair Debt Collection Practices Act by claiming falsely to be the owner of a debt it seeks to enforce.

50. Defendants have violated the Fair Debt Collection Practices Act by stating falsely the manner in which Defendants claim to have obtained ownership of the debt it seeks to enforce.

51. Defendants have violated the Fair Debt Collection Practices Act by seeking to liquidate a debt that was not in default and not collectible due to modification.

52. Defendants have violated the Fair Debt Collection Practices Act by sending false, deceptive, and misleading correspondence to Plaintiff either directly and or via Plaintiff's counsel.

53. The foregoing list is a partial list of known violations and is provided in the pleadings to provide notice of the claim for violation of the Fair Debt Collection Practices Act. Further violations will likely be discovered during litigation.

54. As a result of the actions of defendants which violate the FDCPA, Plaintiff has suffered embarrassment, loss of sleep, depression, fees paid to attorneys, loss of income and other financial and physical harm.

## COUNT II

### Violation of the New Jersey Consumer Fraud Act

(AMS Servicing, LLC; Wealthbridge Mortgage Corp; GMAC Mortgage Corporation a/k/a/ GMAC Mortgage, LLC; FRT 2011-1 Trust; Zucker Goldberg & Ackerman, LLC; DB50 2007-1 Trust)

55. Plaintiff reincorporates by reference all prior allegations of this pleading as if set forth at length herein.

56. In 2010 GMAC Mortgage Corporation entered into a forbearance and permanent loan modification contract with Plaintiff.

57. The modification agreement was drafted by Zucker Goldberg & Ackerman, LLC and signed by them together with Plaintiff.

58.     The loan agreement executed during mediation constituted a continuation of the original loan and a further extension of credit.

59.     Plaintiff complied with the terms of the modification contract and made payments in the amount of at least $58,790.69 over the course of more than two years relative to the subject loan.

60.     Payments under the modification were made to Wealthbridge Mortgage Corp. and AMS Servicing LLC who acted as loan servicers on the modified loan.

61.     GMAC Mortgage and its alleged successors in interest, DB50 2007-1 Trust and FRT 2011-1 Trust, violated the terms of the Agreement.

62.     Defendants failed to dismiss the foreclosure action despite Plaintiff's performance and continued payment of funds on a monthly basis under the modification.

63.     Defendants never applied the funds collected to the loan.

64.     Defendants have injured Plaintiff by collecting her money without providing the full benefit of the negotiated and agreed to modification.

65.     Defendants have injured Plaintiff by continuing to seek a sheriff sale and to enforce a judgment that was modified by contract.

66.     Defendants have injured Plaintiff by continuing to try and collect money in excess to which they are entitled to collect.

67.     Defendants have used deceptive communications and unconscionable business practices resulting in injury to Plaintiff.

68.     Defendants' actions constitute unconscionable commercial practices.

69.     As a result of the Defendants' acts of unconscionable commercial practice, Plaintiff has suffered damages and injury.

## COUNT III

### Breach of Contract

(GMAC Mortgage, LLC; Zucker Goldberg & Ackerman, LLC; DB50 2007-1; FRT 2011-1 Trust; AMS Servicing, LLC; Wealthbridge Mortgage Corp)

70.     Plaintiffs incorporate by reference all prior facts and allegations in this Complaint here as if set forth at length herein.

71.     On May 25, 2010, Plaintiff entered into a forbearance and modification agreement with GMAC.

72.     The contract was drafted by Zucker Goldberg & Ackerman, LLC and signed by its attorney on behalf of GMAC Mortgage LLC.

73.     Defendants DB50 2007-1 Trust and FRT 2011-1 Trust claim to be successors in interest to the promissory note and mortgage and therefore also claim to be successors in interest to the modification contract.

74.     As loan servicing agents of the note and mortgage owner, AMS Servicing, LLC and Wealthbridge Mortgage Corp are/were party to the contract independently and/or by rules of agency.

75.     Plaintiff complied with the obligations of the modification contract, making payments for more than two years until realizing that Defendants had breached each and every obligation they had under the contract.

76.     Defendants breached the contract by failing to apply Plaintiff's payments to reduce the loan balance.

77.     Defendants breached the contract by failing to dismiss the foreclosure action.

78.     Defendants breached the contract by trying to amend the May 2010 agreement to increase the amount claimed to be owed on the loan by thousands of dollars.

79.     Defendants breached the contract by failing to recognize Plaintiff's loan as performing.

80.     Defendants breached the contract by continuing to report Plaintiff's loan as being in default to credit reporting agencies.

81.     As a result of the actions of Defendants, Defendants have breached the contract with Plaintiff.

82.     As a result of the breach of contract, Plaintiff has suffered damages.

## COUNT IV

### Conversion

(All Defendants)

83.     Plaintiffs incorporate by reference all prior facts and allegations in this Complaint here as if set forth at length herein.

84.     Plaintiff paid tens of thousands of dollars against the outstanding mortgage loan.

85.     An insurance check was issued to Plaintiff and Defendant(s), however it was never endorsed by either party.

86.     Upon information and belief Defendant(s) falsely informed homeowner's insurance company that the foreclosure was complete and thereby requested a new check issued solely to Defendant(s).  A new check was reissued solely to Defendant(s) on the false premise that the home had already been foreclosed upon.

87.     At all relevant times, those insurance funds belonged to Plaintiff.

88.     At all relevant times, despite due demand, defendants refused to account for the aforementioned monies.

89.     At every relevant time, despite due demand for same, defendants refused to provide Plaintiff a payoff statement of the loan prior to sheriff sale.

90. The property, over Plaintiff's objections, was sold at sheriff sale.

91. Pursuant to applicable law, post-sale Plaintiff demanded a reinstatement figure which figure by law was required to disclose the amount required *by plaintiff* to pay off the balance of the loan.

92. Defendants produced the redemption statement which did not account for any of the monies paid by Plaintiff against the loan since 2010 and which failed to include any portion of the insurance funds.

93. The redemption statement is a statement required by state law to set forth the true accounting of all monies necessary to redeem the mortgage loan.

94. The redemption statement, as it did not account for the funds provided by Plaintiff against the loan, demanded payment in full *again* for all the aforementioned funds constitutes an act of conversion.

95. Plaintiff formally objected to the quoted redemption amount.

96. As a result of defendants' conversion, Plaintiff has been harmed, has lost money, has suffered emotional harm and distress and has lost ownership of her own home.

## COUNT IV

### Intentional Infliction of Emotional Distress

(All Defendants)

97. Plaintiffs incorporate by reference all prior facts and allegations in this Complaint here as if set forth at length herein.

98. The defendants' actions were intentional, and were designed to cause plaintiffs distress.

99.     In order to compel the plaintiffs to leave their home, defendants jointly engaged in a series of actions which were designed to make the plaintiffs unhappy, cause them distress and force them to give up in defeat and voluntarily quit the premises.

100.    These acts were pursued even though the defendants knew that the defendants lacked the legal right to continue the foreclosure action or otherwise pursue or harass plaintiffs.

101.    As a result of this relentless barrage of harassment by the defendants jointly, plaintiffs have suffered health problems and have suffered injury.

**WHEREFORE, Plaintiff Demands trial by jury and the following relief**:

a.    Compensatory Damages

b.    Punitive Damages

c.    Statutory Damages

d.    Restitution

e.    Injunctive Relief

f.    Attorney's fees and costs

g.    All other relief which this Court determines to be just and fair.

DENBEAUX & DENBEAUX
Attorneys for Plaintiff TamiLynn Willoughby

s/ Joshua W. Denbeaux

Dated: 11-19-2013          By: _____
 Joshua W. Denbeaux, Esq.

DENBEAUX & DENBEAUX
366 Kinderkamack Road
Westwood, NJ  07675
(201) 664-8855
(201) 666-8589 (fax)
jdenbeaux@denbeauxlaw.com