<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| TAMILYNN WILLOUGHBY, | : |
| | : |
| Plaintiff, | :    Civil Case No. 13-7062 (FSH) |
| | : |
| v. | :    **<u>OPINION & ORDER</u>** |
| | : |
| ZUCKER, GOLDBERG & ACKERMAN, LLC, et al., | :    Date: June 16, 2014 |
| | : |
| Defendants. | : |
| | : |

---

**<u>HOCHBERG, District Judge:</u>**

This matter comes before the Court upon Defendant Zucker, Goldberg & Ackerman, LLC's ("ZGA's") motion to dismiss (Dkt. No. 13) pursuant to Federal Rule of Civil Procedure 12(b)(6).   The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

### I.    BACKGROUND[1]

This action arises out of ZGA's representation of GMAC Mortgage Corporation and FRT 2011-1 Trust in a foreclosure action against Plaintiff Tamilynn Willoughby ("Plaintiff" or "Willoughby").

Plaintiff owned and resided in a property located at 710 Second Street, Union Beach, New Jersey since 2001.  (Compl. at ¶¶ 3, 10.)  On February 10, 2006, Plaintiff refinanced her residential mortgage loan with Security Atlantic Mortgage Co. Inc.  (*Id*. at ¶ 11.)  In connection with same, Plaintiff executed a promissory note in the amount of $183,000 payable to Security Atlantic Mortgage Co. Inc. (*Id*. at ¶ 12.)  Shortly thereafter, in 2006, Plaintiff defaulted on her

---

[1] These facts are taken from Plaintiff's complaint (Dkt. No. 1), unless otherwise noted.

mortgage loan.  (*Id*. at ¶ 15.)  As a result, on October 23, 2006, ZGA filed a foreclosure action on behalf of GMAC against Plaintiff, under docket number F-19159-06.  (*Id*. at ¶¶ 16-17.)  A final foreclosure judgment was entered on August 17, 2007.  (Dkt. No. 30, Ex. A.)

Thereafter, and prior to the sale of the subject property, the foreclosure action was forwarded to mediation.  (Compl. at ¶ 19.)  On May 25, 2010, Plaintiff alleges that GMAC, through their counsel, ZGA, agreed to the terms of a loan modification (the "Mediation Agreement").  (*Id*. at ¶¶ 19-21.)  According to the Complaint, Plaintiff has made all payments required by the modification agreement.  (*Id*. at ¶ 22.)  On July 25, 2010, Plaintiff executed an agreement provided by co-Defendant, Wealthbridge Mortgage Corp. ("Wealthbridge"), which Plaintiff claims mirrored the terms set forth in the mediation accord and confirmed that full compliance by her would result in a permanent loan modification.  (*Id*. at ¶ 23.)  During the forbearance period, the loan servicer changed from Wealthbridge to co-Defendant, AMS Servicing, LLC ("AMS").  (*Id*. at ¶ 25.)  Starting on June 7, 2011 and continuing until May 23, 2012, Plaintiff claims she received a series of three letters from AMS regarding a permanent loan modification that contained materially different terms than the ones agreed to at the mediation.  (*Id*. at ¶¶ 26-33.)  Despite notifying AMS of the discrepancies and refusing to sign the modification agreement, Plaintiff claims to have made every payment, as per the June 2011 modification proposal.  (*Id*. at ¶¶ 33-34.)  In total, Plaintiff claims to have paid at least $58,790.69 between June 2010 and December 2012.  (*Id*. at ¶ 35.)

Plaintiff also claims that during the aforementioned time period, her home was severely damaged by Hurricane Sandy, thus, an insurance carrier issued payment in the amount of $132,682.66 against the repairs for the property.  (*Id*. at ¶ 37.)  However, she claims "Defendants" wrongfully received all insurance funds.  (*Id*.)  Lastly, Plaintiff claims that she

applied for special funding to rebuild her property to be in compliance with new building codes and/or recommendations to prevent a storm in the future, which was granted in the amount of $121,941.40; however, she never ultimately received same as her property was sold at a Sheriff's sale for $100.00.  (*Id*. at ¶¶ 37-43.)

Plaintiff alleges that the final 2007 foreclosure judgment against her was for $205,915.30, that she has since paid $58,790.69, and that the Defendants have received $132,682.66 from insurance payments related to the property.  (*Id*. at ¶ 40.)  Plaintiff also alleges that Defendants' wrongful foreclosure sale resulted in her losing $121,941.40 earmarked for improvement of her property under the State of New Jersey's Department of Community Affairs Homeowner Grant for Reconstruction, Rehabilitation, Elevation and Mitigation (RREM) Program for repairing and improving Sandy storm damaged property.  (*Id*. at ¶ 43.)  Plaintiff alleges that Defendants stated that the redemption amount for her home was $292,691.92—an amount that allegedly did not take into account prior payments or insurance proceeds.  (*Id*. at ¶ 44.)

Plaintiff brings the following causes of action against ZGA:  (i) violation of the Fair Debt Collection Practices Act ("FDCPA"); (ii) violation of the New Jersey Consumer Fraud Act ("NJCFA"); and (iii) conversion.[2]

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This

---

[2] Plaintiff dropped her claims for intentional infliction of emotional distress and breach of contract against ZGA.  (Dkt. No. 36 at 3.)

does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis.  "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).  On a motion to dismiss, the Court may also take judicial notice of the record from a previous court proceeding involving the parties.  *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

### III.    DISCUSSION

ZGA moves to dismiss Plaintiff's claims on a variety of grounds including under the *Rooker-Feldman* doctrine, principles of *res judicata*, Rule 12(b)(6), the New Jersey litigation privilege doctrine, and the *Noerr-Pennington* doctrine.   The first two of these grounds are addressed below.   The Court also addresses ZGA's Rule 12(b)(6) arguments with respect to Plaintiff's FDCPA claim.

#### a.  The *Rooker-Feldman* Doctrine

ZGA argues that the Court lacks subject-matter jurisdiction over this action pursuant to the *Rooker-Feldman* doctrine.

Pursuant to the *Rooker-Feldman* doctrine, "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate [federal] claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." *Marks v. Stinson*, 19 F.3d 873, 885 n. 11 (3d Cir. 1994); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).   "The phrase 'inextricably intertwined' does not create an additional legal test or expand the scope of *Rooker-Feldman* beyond challenges to state-court judgments.   When a federal plaintiff brings a claim, whether or not raised in state court, that asserts injury caused by a state-court judgment and seeks review and reversal of that judgment, the federal claim is 'inextricably intertwined' with the state judgment."   *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 170 (3d Cir. 2010).   "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to

review and reject the state judgments." *Id.* at 166.  As the Supreme Court has cautioned, "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Third Circuit has held that the *Rooker-Feldman* doctrine bars federal courts from providing relief that would invalidate a state court foreclosure decision.  *See*, *e.g.*, *Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 51 (3d Cir. 2013); *Manu v. Nat'l City Bank of Indiana*, 471 F. App'x 101, 105 (3d Cir. 2012); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 152 (3d Cir. 2008); *Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005); *Easley v. New Century Mortg. Corp.*, Civ. No. 09-4053, 2010 WL 3622511, at *2 (3d Cir. Sept. 20, 2010); *Laychock v. Wells Fargo Home Mortg.*, Civ. No. 09-2262, 2010 WL 4284525, at *2 (3d Cir. Nov. 1, 2010).

In this case, adjudicating Plaintiff's claims would require this Court to engage in appellate review of the state court foreclosure action.  Plaintiff is challenging the right of the lender to have foreclosed on the property, is seeking to litigate the validity of the foreclosure sale, is seeking to circumvent the state court's denial of her request for an accounting, and is relitigating the redemption value of her home.  The state court already ruled on these issues. This type of action is exactly what *Rooker-Feldman* is meant to prevent:  an attempt to invalidate the final judgment of foreclosure and various other orders from a state court action in a separate federal court action.  This case also meets the other requirements of the *Rooker-Feldman* doctrine:  (1) Plaintiff lost in state court; (2) the gravamen of Plaintiff's complaint focuses on the

loss of her home and the Defendants' alleged failure to credit certain payments and insurance proceeds against the mortgage (precisely the arguments rejected by the state court); (3) final judgment was issued in state court prior to the filing of this matter; and (4) in order to obtain the relief Plaintiff seeks, this Court would have to review and reject the state court's prior orders. *See Great W. Mining & Mineral Co.*, 615 F.3d at 166.

In response, Plaintiff makes four arguments. First, Plaintiff argues that the bases for her complaint are deceptive statements and fraudulent debt collection activities that occurred after the sheriff's sale of her home. Therefore, she argues, her claims did not accrue until after the sheriff's sale and could not have been raised in the underlying state court action.

Plaintiff's complaint tells a different story. As noted above, the vast majority of the factual allegations made in Plaintiff's complaint are related to actions prior to the sheriff's sale. The focus of the complaint is that "Defendants" failed to abide by an alleged settlement agreement—an argument considered and rejected by the state court. Indeed, only a small portion of Plaintiff's complaint contains any specific allegations relating to events after the sale. (Compl. at ¶¶ 44, 91-96.) Those portions of Plaintiff's complaint simply allege that Plaintiff invoked New Jersey's 10-day "Right of Redemption" and demanded an accounting so that she could determine the amount needed to redeem the property. (*Id.*) According to the complaint, the total redemption amount reported was $292,691.92—an amount that Plaintiff alleges fails to take into account her prior payments or insurance proceeds. (*Id.*) In essence, Plaintiff complains that the accounting failed to credit her prior payments (payment that were allegedly made prior to the foreclosure sale). These arguments were also considered and rejected by the state court. Moreover, in response to this Court's standing order regarding her FDCPA claim, Plaintiff stated that her FDCPA claim was based on Defendants' "false representations and using deceptive

means to induce Ms. Willoughby into making payments which were never applied to her debt."[3] (Dkt. No. 31 at 9.)

The crux of Plaintiff's complaint is that the various defendants failed to honor an alleged mediated settlement agreement and failed to offset any owed amount with alleged prior payments and insurance proceeds. All of these factual allegations were made to the state court and rejected. (*See, e.g.*, Dkt. No. 13, Ex. C at 46:16-19, 47:3-11, Ex. D, Ex. H, Ex. I, Ex. J; Dkt. No. 26, Ex. E (describing Willoughby's appeal issues as including: failure to credit prior payments, failure to credit insurance amounts, failure to enforce the alleged settlement agreement, failure to state the proper redemption amount); Dkt. No. 41-1, Ex. C (arguing that the "payoff" amount failed to take in account prior payments and insurance proceeds).) Those determinations are currently on appeal in the state court system. (Dkt. No. 26, Ex. E; Dkt. No. 36, Ex. B (arguing that the state court erred by not applying Willoughby's prior payments and insurance proceeds against the mortgage or redemption amount).) Moreover, "[i]n foreclosure actions, courts retain jurisdiction until either: (1) if the home is sold at sheriff's sale, the later of ten days after the sheriff's sale or the delivery of the sheriff's deed; or (2) if the sheriff's sale is averted by payoff, until payment is made, the judgment is entered, and the case is dismissed." *Napoli v. HSBC Mortgage Servs. Inc.*, Civ. No. 12- 222, 2012 WL 3715936, at *4 (D.N.J. Aug. 27, 2012) (citing *Hardyston Nat'l Bank of Hamburg, N.J. v. Tartamella*, 56 N.J. 508 (1970)). Therefore, the state court still had jurisdiction during Plaintiff's invocation of the right of redemption. Of course, the representations at issue are only "false" if the state court erred by either not enforcing the alleged mediation agreement or by not crediting alleged prior payments

---

[3] Plaintiff makes a contradictory argument in its opposition to the motion to dismiss: Plaintiff states that "the litigation privilege does not apply to this claim (or any of Plaintiff's claims) because the claims are not based on communications made by ZGA." (Dkt. No. 36 at 14 (emphasis in original).)

8

and insurance proceeds.  This review of a state court's action is precisely what a district court may not do under *Rooker-Feldman* and principles of *res judicata*.

Second, Plaintiff argues that New Jersey's Court Rules prohibited her from raising these claims in her foreclosure action.  Specifically, Plaintiff alleges that she was unable to raise her FDCPA, NJCFA, and conversion claims in the foreclosure action due to New Jersey Court Rule 4:64-5.  Plaintiff's argument fails for at least two reasons.  First, Plaintiff did in fact raise the factual bases for these claims in the state court action.[4]  Second, Rule 4:64-5 only restricts a party from pleading certain claims "without leave of court."  The Rule does not prohibit a party from seeking state court approval for additional claims.  In any event, Plaintiff's claims are germane to the foreclosure action and could have been raised even without court approval.  *See LaSalle Nat. Bank v. Johnson*, F-12888-05, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. Mar. 3, 2006) (noting that "incorrect computation of the amounts due" is germane to a foreclosure action).[5]

---

[4] Plaintiff also argues that the application of the *Rooker-Feldman* doctrine would violate her Constitutional right to a trial by jury by allowing a chancery court to determine issues of law. The Court disagrees.  All Plaintiff seeks is a second bite at the apple.  Plaintiff raised these issues in her state court foreclosure action and lost.  She may not now file a case in federal court seeking to re-litigate those same exact issues.  Indeed, it was Plaintiff's choice to raise those issues in state chancery court, and it is black letter law that the right to a trial by jury is a waivable right.  *See Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977).  By choosing to raise her claims in state chancery court, one could argue that Plaintiff waived any right to a jury. However, the Court need not resolve this issue as it would impinge on the domain of the state court and the appeal currently pending in that court system.

[5] The Court notes that New Jersey's "entire controversy doctrine" applies in foreclosure actions, but is narrower in this context and only requires "germane" counterclaims be joined.  *See* NJ Court Rules 4:30A & 4:64:-5.  "Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action."  *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011).  These include "payment and discharge, failure of consideration, incorrect computation of the amounts due, fraud, mistake, waste, credit for rental value of the mortgaged premises, usury, unjust enrichment, setoff, recoupment, non-compliance with regulatory pre-requisites to foreclosure, and abatement of the mortgage debt."  *LaSalle Nat. Bank*, 2006 WL 551563, at *2.

Third, Plaintiff argues that she should be allowed to proceed against ZGA because ZGA was not a party to the foreclosure action and could not have been added. The Court notes that Plaintiff did not provide any statutory or case law citation for this argument. It is also undisputed that ZGA represented the mortgage company in the underlying foreclosure action. Although *Rooker-Feldman* does not usually apply to non-parties, this Court believes it applies to this set of facts. That is, it extends to lawyers who represented a party in the underlying state court action when the basis for alleged liability in the federal action is that the lawyers represented a party in the state court action. *See Golden v. Helen Sigman & Associates, Ltd.*, 611 F.3d 356, 362 (7th Cir. 2010) (applying *Rooker-Feldman* to an action involving, *inter alia*, an attorney from the underlying state court action).

Finally, Plaintiff argues that the form of relief she is seeking is entirely different from the relief sought in the underlying foreclosure action. But the form of relief is not dispositive to the application of the *Rooker-Feldman* Doctrine. The doctrine "prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling. Stated another way, *Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders." *McAllister v. Allegheny Cnty. Family Div.*, 128 F. App'x 901, 902 (3d Cir. 2005) (internal citations and quotation marks omitted). Here, a judgment in favor of Plaintiff would necessarily require a finding that the state court was wrong even though Plaintiff now only seeks money damages.[6] Put another way, Plaintiff's injury in this case was caused by the state court's rulings, and absent the state court's rulings, Plaintiff would not have the injury she now seeks to

---

Plaintiff's claims relate directly to how much was owed on her mortgage and are, therefore, germane to the foreclosure action.

[6] Although Plaintiff states that she is only seeking damages, the complaint asks for both damages and equitable relief in the form of an injunction. (Compl. at 14.)

redress.  Therefore, for the reasons stated above, the Court dismisses this matter with respect to

ZGA under the *Rooker-Feldman* doctrine.

### b.  *Res Judicata*

Even if *Rooker-Feldman* did not apply, *res judicata* bars consideration of any issues that

could have been raised in the foreclosure action, re-litigation of issues that were decided in the

foreclosure action, and Plaintiff's request to set aside the sheriff's sale.  *Res judicata* consists of

the twin doctrines of claim preclusion and issue preclusion.

> Under the doctrine of claim preclusion, a final judgment forecloses
> successive litigation of the very same claim, whether or not
> relitigation of the claim raises the same issues as the earlier suit.
> Issue preclusion, in contrast, bars successive litigation of an issue
> of fact or law actually litigated and resolved in a valid court
> determination essential to the prior judgment, even if the issue
> recurs in the context of a different claim.

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal citations and quotation marks omitted).

"When a prior case has been adjudicated in a state court, federal courts are required by 28

U.S.C. § 1738 to give full faith and credit to the state judgment."  *Edmundson v. Borough of*

*Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (citations omitted).  In doing so, a federal court

applies "the same preclusion rules as would the courts of that state."[7]  *Id*.  Under New Jersey

law, claim preclusion applies if the subsequent action involves substantially similar or identical

causes of action, issues, parties and relief as were involved in the prior action.  *Culver v. Ins. Co.*

*of N. Am.*, 115 N.J. 451, 460 (1989).  Claim preclusion requires:

> (1) the judgment in the prior action must be valid, final, and on the
> merits; (2) the parties in the later action must be identical to or in
> privity with those in the prior action; and (3) the claim in the later

---

[7] "The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought."  *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). "[R]es judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants."  *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972).

action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 412 (1991).[8]

Under New Jersey law, issue preclusion applies when:

(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 352 (2007).[9]   When considering whether issues are identical, courts should consider the following factors:

(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the *material* facts alleged are the same.

*Id*. at 353 (emphasis in original).

Here, the New Jersey state court rejected Plaintiff's arguments related to the alleged loan modification.   Plaintiff filed numerous motions and raised a host of issues in challenging the foreclosure, and, even after judgment was entered against her, she raised the same arguments

---

[8] Federal claim preclusion is virtually identical.  *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990) ("Claim preclusion, the concept that must be applied in the present case, requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies.").

[9] Federal issue preclusion is virtually identical.  *Burlington N. R. Co. v. Hyundai Merch. Marine Co., Ltd.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) ("The prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.").

again in motions for reconsideration and on appeal in state court.  Any claim that was, or could have been, litigated in state court is barred by *res judicata* and subject to dismissal under Rule 12(b)(6).

For example, this action meets all the requirements for an application of claim preclusion: (1) the underlying foreclosure judgment is final and was on the merits; (2) ZGA, as the mortgagor's attorney, is in privity with at least one party in the underlying state court action; (3) the claim in this action arises from the same transaction or occurrence as the underlying foreclosure action, to wit, the same allegations and factual circumstances Plaintiff raised as defenses in the foreclosure action form the basis for her complaint in this Court.  Therefore, although Plaintiff did not raise these precise causes of action in the underlying foreclosure action, they could have been raised and are now foreclosed by the doctrine of claim preclusion.

Plaintiff's claims are also barred by issue preclusion.  The very same factual issues were considered and rejected by the state court.  The elements of issue preclusion are met:  (1) the issues are identical (*see infra*); (2) the issues were actually litigated in state court as evidenced by the various filings and orders in the state court foreclosure action cited above; (3) there is a final judgment on the merits in the state foreclosure action, and it is now on appeal; (4) the state court's rulings regarding the alleged loan modification and alleged payments was essential to the finality of that action; and (5) ZGA, as the mortgagor's attorney, is in privity with at least one party in the underlying state court action.  In determining that the issues are identical, the Court considered the necessary factors, which all weigh in favor of finding an identity of issues:  (1) the acts complained of are the same, to wit, the failure to take into account the alleged prior payments and insurance money against the outstanding loan; (2) although the label differs, the underlying theory of recovery is the same; (3) the same evidence would be necessary in this

action as in the state court action (*e.g.*, the cashed checks, the modification agreement, the insurance agreement); and (4) all of the material facts are the same.

Plaintiff made these arguments to the state court and now must pursue them in that venue. To the extent the state court erred by not enforcing the alleged agreement or not forcing Defendants to credit prior payments against the mortgage (or redemption amount), Plaintiff must put her faith in the New Jersey appellate courts.

### c.   FDCPA Claims

While the Court is dismissing this matter under the *Rooker-Feldman* doctrine and *res judicata*, Plaintiff's FDCPA claim against ZGA would also fail under *Iqbal* as it is based on generic legal conclusions and vague statements.  The FDCPA allegations in Plaintiff's complaint do not contain the specific factual bases for the claim or ZGA's particular alleged wrongful acts.[10]  Moreover, Plaintiff's arguments about an allegedly incorrect redemption amount do not change the outcome here.  (Dkt. No. 36 at 16.)  Plaintiff's right of redemption is not a "debt" as contemplated by the FDCPA.  Rather, the right of redemption is more like an option to purchase that does not fall within the FDCPA as it is not an "obligation."  *See Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002) ("In sum, the FDCPA's definition of debt is broad, but it requires at least the existence or alleged existence of an obligation to pay money.").  Without a debt, there is no FDCPA violation.

Therefore, even if the Court were not dismissing on the grounds discussed above, it would dismiss the FDCPA claim against ZGA for these separate and independent reasons.[11]

---

[10] Allegations directed at the other named Defendants do not assist Plaintiff in meeting the requirements of Rule 8 with respect to ZGA.

[11] The Court notes that Plaintiff's FDCPA claim is the basis for federal jurisdiction in this matter. Therefore, even if *res judicata* and the *Rooker-Feldman* doctrine did not bar Plaintiff's other

## IV.     CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 16th day of June, 2014,

**ORDERED** that ZGA's motion to dismiss (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that that ZGA is **DISMISSED** from this matter.

**IT IS SO ORDERED.**

                                **    /s/ Hon. Faith S. Hochberg**
                                Hon. Faith S. Hochberg, U.S.D.J.

---

state law claims—which they do—the Court would decline supplemental jurisdiction over Plaintiff's remaining state law causes of action and dismiss this action.